# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00721-CV

**Raymond K. Oukrop, DDS, P.C., Appellant**

**v.**

**Ronald Wayne Tatsch, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-12-000981, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Oukrop appeals from the trial court's denial of his petition to revive a dormant judgment. He argues that a turnover order kept the underlying judgment from becoming dormant for ten years after the turnover order was issued. Oukrop also requests attorney's fees and court costs should he prevail on appeal. We will affirm the trial court's judgment.

## BACKGROUND

On February 13, 1996, Oukrop obtained a judgment against Tatsch before the Justice of the Peace Court Precinct 5 in a suit for unpaid dental bills. In an effort to collect on the judgment, Oukrop obtained a writ of execution from the justice court on April 17, 1996. The writ of execution was subsequently returned when no seizable property could be found to satisfy Tatsch's obligation. Oukrop continued efforts to collect on the judgment and obtained two turnover orders, one in 1998 and another on June 22, 2000. The second turnover order sought Tatsch's income tax

refunds, but the receiver appointed in the case was unsuccessful in enforcing the order. Oukrop made other unsuccessful efforts toward collection, including letters, discovery, and show-cause hearings from 2000 to 2010.

On June 7, 2010, Oukrop filed in the justice court a petition to revive the judgment, which was denied after a hearing. Oukrop timely appealed the justice court's denial of his petition to the county court at law. After a bench trial, the county court at law denied Oukrop's petition to revive the judgment. The court found that the underlying judgment became dormant on April 17, 2006, ten years after the issuance of the original writ of execution, and rejected Oukrop's argument that a turnover order constituted a writ of execution preventing the judgment from becoming dormant. The court concluded that Texas law only allows a dormant judgment to be revived within two years of the date that the judgment became dormant and that the petition to revive judgment should have been filed on or before April 17, 2008, thus Oukrop's petition, filed in 2010, was untimely.

At the conclusion of the case, the court denied Oukrop's petition to revive judgment. Oukrop had previously been awarded $475 as reasonable attorney's fees in connection with the first turnover proceeding and $400 in connection with the second turnover proceeding. However, the court did not award attorney's fees or court costs to Oukrop on his petition to revive because he did not prevail in the proceedings to revive the judgment. Oukrop then filed this appeal.

**DISCUSSION**

In his sole appellate issue, Oukrop contends that a turnover order is a writ of execution for purposes of preventing a judgment from becoming dormant and as such, the second

2

turnover order extended the date of dormancy for the underlying judgment to ten years after the date that the second turnover order issued. Oukrop's issue presents a question of law that we review de novo. *Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007).

Under Texas law, a judgment is enforceable for ten years from the date the judgment was rendered, and then it becomes dormant. If a writ of execution is issued within ten years after the rendition of the judgment, the writ of execution will prolong the date that the judgment becomes dormant to ten years from the date of the issuance of the writ of execution. *See* Tex. Civ. Prac. & Rem. Code § 34.001. Moreover, a second writ of execution may be issued at any time within ten years after issuance of the first writ of execution, prolonging the date that the judgment becomes dormant for another ten years, and so on. *Id.* If a judgment becomes dormant, it may be revived by a writ of scire facias or by an action of debt that is brought within two years of the date that the judgment became dormant. *See id.* § 31.006.

**Is a turnover order a writ of execution?**

Both parties agree that the judgment here went dormant but disagree about the date that dormancy began. The question before us is whether the second turnover order, filed within ten years of the April 1996 writ of execution, extended the life of the judgment by ten years from the issuance date of the second turnover order, i.e., whether a turnover order is a writ of execution. We conclude that it is not.

A writ of execution is the principal process for the collection of money judgments. Tex. R. Civ. P. 621. Issued by the clerk of the court where the judgment was signed and delivered

3

to any sheriff or constable in Texas, the writ empowers the officer to levy on a debtor's nonexempt real and personal property within the officer's jurisdiction, sell the property at public auction, and apply the proceeds toward satisfaction of the judgment. Tex. R. Civ. P. 622, 627, 637. The term "issue," as applied to an execution, means more than the mere clerical preparation and attestation of the writ, and includes its delivery to an officer for enforcement. *Bourn v. Robinson*, 107 S.W. 873, 875 (Tex. Civ. App.—Texarkana 1908, no writ). To be in compliance with the statute, the writ must be placed in the hands of the officer whose duty it is to execute it. *Id.* Until this is done, there has been no sufficient compliance with the law. *See* Tex. R. Civ. P. 622-56.

An initial writ of execution may be issued at any time until ten years have elapsed from rendition of the judgment. *See* Tex. Civ. Prac. & Rem. Code § 34.001. With the exception of judgments under the Family Code for child support, if a writ of execution is not issued within ten years after the rendition of the judgment, the judgment becomes dormant and execution may not be issued on it, unless it is revived. *Id.* § 34.001(a), (c). However, if a writ of execution is issued within that ten-year period, another writ may be issued at any time within ten years after issuance of the first writ. *Id.* § 34.001(b); *see Hicks v. First Nat'l Bank*, 778 S.W.2d 98, 103-04 (Tex. App.—Amarillo 1989, writ denied) (op. on reh'g). The judgment will then become dormant ten years from the date of the second writ's issuance, unless it is revived. Tex. Civ. Prac. & Rem. Code § 34.001(b); *see Hicks*, 778 S.W.2d at 104. In other words, the judgment does not become dormant until the expiration of ten years from the date of the last writ of execution. *See Blanks v. Radford*, 188 S.W.2d 879, 888 (Tex. Civ. App.—Eastland 1945, writ ref'd w.o.m.); *Grissom v. F.W. Heitmann Co.*, 130 S.W.2d 1054, 1056-57 (Tex. Civ. App.—Galveston 1939, writ ref'd).

4

A judgment creditor may keep the judgment alive indefinitely by having a writ of execution issued within ten years of the previous writ. *See* Tex. Civ. Prac. & Rem. Code § 34.001; *Cadle Co. v. Rollins*, No. 01-09-00165-CV, 2010 Tex. App. LEXIS 1421, at \*3-4 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.).

A dormant judgment is one which has not been satisfied or extinguished by lapse of time, but which has remained so long unexecuted that execution cannot now be issued upon it without first reviving the judgment. *Burlington State Bank v. Marlin Nat'l Bank*, 207 S.W. 954, 956 (Tex. Civ. App.—Austin 1918, no writ). If a judgment becomes dormant in Texas, it may be revived by a writ of scire facias, which asks the court that rendered the original judgment to revive the judgment on its records, or by an action of debt, brought not later than the second anniversary of the date that the judgment becomes dormant. Tex. Civ. Prac. & Rem. Code § 31.006. A scire facias proceeding for the revival of a judgment does not constitute a new suit but is merely a continuation of the original suit in which the judgment was rendered. *Berly v. Sias*, 255 S.W.2d 505, 508 (Tex. 1953). The statutory procedure to revive a judgment in Texas is exclusive and precludes any other method that may be resorted to by the parties. *White v. Stewart*, 19 S.W.2d 795, 798 (Tex. Civ. App.—Dallas 1929, writ ref'd).

A postjudgment turnover order is a "procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process." *Bahar v. Lyon Fin. Servs., Inc.*, 330 S.W.3d 379, 386 (Tex. App.—Austin 2010, pet. denied) (quoting *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991)). The turnover statute was enacted to empower the rendering court to assist a judgment creditor's efforts

5

to reach the judgment debtor's property to satisfy the judgment. *See* Tex. Civ. Prac. & Rem. Code § 31.002. The purpose of a turnover proceeding is to ascertain whether an asset is either in the judgment debtor's possession or subject to the debtor's control. *Buller*, 806 S.W.2d at 224.

Oukrop urges a broad interpretation of the writ of execution to include orders that are not exclusively directed to a sheriff or constable. He argues that because a court-appointed receiver is an officer of the court, the receiver satisfies the requisite of delivery to an officer for enforcement. *See* Tex. R. Civ. P. 621. However, although a court-appointed receiver may be an officer of the court, a court-appointed receiver is not a sheriff or constable of the State, which is specifically stated as a requirement for a writ of execution in Texas Rules of Civil Procedure 622 and 629. Oukrop argues that a court-appointed receiver wielding a turnover order has the same effect as a sheriff or constable of the State serving a writ of execution. However, a sheriff or constable of the State has the authority to take possession of property owed by a judgment debtor, and the receiver in contrast was appointed by the court to simply receive documents from Tatsch, the judgment debtor. The turnover order required Tatsch to deliver certain nonexempt property to the receiver and required the receiver to apply the proceeds from the nonexempt property to the underlying judgment. The receiver was not authorized to seize the nonexempt property. Thus, a turnover order in the hands of a court-appointed receiver is not the equivalent of a writ of execution delivered to a sheriff or constable of the State.

Texas Rule of Civil Procedure 629 clearly sets forth the requisites of execution to enforce a judgment. Oukrop argues that a variety of judgment-collection activities are included within the meaning of execution and cites case law pertaining to other judgment-collection activities

6

in support of his argument that a turnover order should also be included in the meaning of execution. *See Swafford v. Holman*, 446 S.W.2d 75, 80 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.) (order of sale); *Williams v. Masterson*, 306 S.W.2d 152, 155-56 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.) (writ of possession); *Grissom*, 130 S.W.2d at 1056-57 (alias execution); *Ludtke v. Bankers' Trust Co.*, 251 S.W. 600, 604 (Tex. Civ. App.—Galveston 1922, writ ref'd) (writ of *venditioni exponas*). However, each of these judgment-collection activities qualify as writs of execution because they meet the specific requisites set forth in Rule 629—they are issued by the clerk and delivered to a sheriff or constable for subsequent action. *See* Tex. R. Civ. P. 622-56. A turnover order does not satisfy the requisites of execution because it is not issued by the clerk and served by a sheriff or constable of the State. Here, for example, the turnover order was sent to Tatsch by mail from the receiver, who had no authority to seize property to satisfy the debt. Although the turnover order is a court order to enforce the previous writ of execution, it is not a new writ of execution that prevents the judgment from becoming dormant. *See Shields v. Stark*, 51 S.W. 540, 540 (Tex. Civ. App.—Fort Worth 1899, no writ) (concluding that writ of garnishment was not in any sense an execution and did not keep judgment alive).

This conclusion is supported by the statutory scheme for enforcement of judgments. Writs of execution and turnover orders are located in different chapters of the Texas Civil Practice and Remedies Code. Turnover orders are discussed and provided for in Chapter 31 titled "Judgments," and writs of execution are discussed and provided for in Chapter 34 titled "Execution on Judgments." The law could have, but does not, provide that turnover orders can be a form of writ of execution. There is no dispute that turnover orders are among the several methods to

7

collect or enforce judgments, but a turnover order is not a writ of execution and does not prevent a judgment from becoming dormant. *See Shields*, 51 S.W. at 540 (distinguishing garnishments from executions). The only method provided for under the rules and statutes to prevent a judgment from becoming dormant is a writ of execution. *See* Tex. R. Civ. P. 622-56; Tex. Civ. Prac. & Rem. Code § 34.001. We overrule Oukrop's sole appellate issue.

**Attorney's fees and costs**

Oukrop has requested attorney's fees and court costs should he prevail in this appeal on his petition to revive the underlying judgment against Tatsch. However, Oukrop did not prevail on appeal and thus, he is not entitled to recover attorney's fees and court costs.

## CONCLUSION

The trial court correctly determined that a turnover order is not a writ of execution that would prevent the underlying judgment from becoming dormant. Because Oukrop did not prevail on appeal, he is not entitled to attorney's fees and court costs. We affirm the trial court's judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed: July 23, 2014